UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JESUS JESSE SUAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-08-217 |
| | § | |
| NUECES COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered Defendant Nueces County's motion for summary judgment. (D.E. 36.)  For the reasons set forth below, Defendant's motion is partially granted and partially denied.

### I.    Jurisdiction

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Plaintiff brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the Age Discrimination in Employment Act of 1967, and 42 U.S.C. § 1983

### II.    Factual Background

Plaintiff Jesus "Jesse" Suarez is a 56-year-old devout Roman Catholic. (D.E. 37, Ex. 1, p. 1-2.)   He has been employed by the Nueces County Community Services and Inland Parks Department since October 5, 1998.  (D.E. 37, Ex. 1, p. 2.)  Suarez was initially hired as  Park Construction Foreman.  (D.E. 37, Ex. 1, p. 2.)  In this capacity, Plaintiff was responsible for planning, design and budgeting of construction, repair and remodeling of park buildings and equipment.  (D.E. 37, Ex. 1, p. 2.)

In the summer of 2002, Suarez reported his supervisor, former Parks Director Christopher Lawrence, to the Director of Human Resources for Nueces County for looking at pictures of naked children on Lawrence's work computer. (D.E. 37, Ex. 1, p. 2-3.)  Lawrence was then investigated and prosecuted on child pornography charges. (D.E. 37, Ex. 1, p. 2-3.)  On October 1, 2002, Suarez was "demoted" from the Park Construction Foreman position to a carpenter position purportedly due to budget cuts. (D.E. 1, p. 5.)  However, Plaintiff maintains that he was actually demoted in retaliation for assisting the FBI with the prosecution of Lawrence for possession of child pornography.  (D.E. 37, Ex. 1, p. 3.)

Plaintiff states that his supervisors and coworkers viewed him as a "troublemaker" for reporting Lawrence to the authorities. (D.E. 37, Ex. 1, p. 3.)  Suarez contends that his "actions in reporting Mr. Lawrence earned [him] the nickname of 'rat' and 'snitch.'  (D.E. 37, Ex. 1, p. 3.)  Suarez contends that Edward Herrera, Director of Nueces County Community Services and Island Parks, called Plaintiff a "big complainer." (D.E. 37, Ex. 1, p. 3.)   Further, Elsa Saenz, the Director of Human Resources for the Nueces County, called Plaintiff a "constant complainer" and "tried to provoke [Suarez] into quitting."  (D.E. 37, Ex. 1, p. 3.)  Saenz then told Suarez that "if [he] had reservations about quitting, [he should] just pray on it" in a tone "dripping with sarcasm." (D.E. 37, Ex. 1, p. 3.)

Suarez is supervised by Sylvester Stovall, Jr. and Raul Rodriguez.  (D.E. 37, Ex. 1, p. 3.)  Stovall has been the Inland Parks foreman since August, 2003 and has been Suarez's supervisor since 2005.  (D.E. 37, Ex. 1, p. 3; D.E. 36, Ex. 2, p. 1.)  Rodriguez is the assistant foreman.  (D.E. 37, Ex. 1, p. 3.)  Stovall, who is 41 years old, would tell

Suarez "to [his] face that [Suarez] was too old, too slow, and [he] could not keep up." (D.E. 37, Ex. 1, p. 3.)  Blake Pettis, the person who took over for Lawrence as Parks Director, "would tell [Suarez] to [his] face that Nueces County needed younger employees, not old ones like [Suarez]." (D.E. 37, Ex. 1, p. 3.)  Stovall would not permit Suarez to take time off or to work overtime "because [Suarez] didn't work as fast as [Stovall or the younger crew members] did." (D.E. 37, Ex. 1, p. 3-4.)  Rodriguez "would make mocking sounds behind [Suarez's] back, and compare [Suarez] to Humpty Dumpty because [Suarez] was old and injured.  (D.E. 37, Ex. 1, p. 4.)

According to Suarez, "[p]eople would put dead rats in [his] work van by hiding them in brown paper bags" causing Suarez to "almost vomit" from the stench. (D.E. 37, Ex. 1, p. 4.)  Suarez states that he "found the rotting carcasses of three dead rats" in the back of his work van." (D.E. 37, Ex. 1, p. 4.)  Suarez "would find nails and metal tacks thrown near the tires to [his] vehicle" and one time, "someone threw a machete at [his] vehicle."  (D.E. 37, Ex. 1, p. 4.)  Suarez also states that "[p]eople would leave written notes on [his] desk calling [him] a 'rat.'"  (D.E. 37, Ex. 1, p. 4.)  Because of the way he was treated at work, Suarez "felt as if [his] life was in danger" and would "constantly look[] over [his] shoulder." (D.E. 37, Ex. 1, p. 4.)   Suarez alleges that he suffered nightmares, panic attacks, and high blood pressure due to this work environment. (D.E. 37, Ex. 1, p. 4.)

Further, according to Suarez, Stovall and Rodriguez "were hostile to [Suarez's religious] beliefs and "made fun of the fact that [Suarez] venerate[s] the Virgin Mary. (D.E. 37, Ex. 1, p. 4.)  Rodriguez would tell Suarez that Rodriguez had the "right" religion and Suarez had the "wrong" religion.  (D.E. 37, Ex. 1, p. 5.)  Rodriguez would

"ridicule [Suarez's] Catholicism" and tell Suarez that he was "living in a state of sin." (D.E. 37, Ex. 1, p. 5.)  Rodriguez would "mock" Suarez's beliefs regarding purgatory and would accuse Suarez of "being the devil, carrying the devil in [him, and] exposing [Suarez's] family to the devil in [him.] (D.E. 37, Ex. 1, p. 5.)  Rodriguez would tell Suarez that "the devil was behind [Suarez's] cross." (D.E. 37, Ex. 1, p. 5.)  Rodriguez "would try to convert" Suarez and other employees.

At some unspecified time, Suarez complained to Stovall about the way Rodriguez treated Suarez.  (D.E. 37, Ex. 1, p. 5.)  Suarez and Stovall disagree as to what happened next.   According to Suarez, Stovall "ordered [Suarez] to remove all [of Suarez's] religious articles even though other employees were allowed to keep crosses, pictures of angels and Bible quotes at their desk."  Stovall, on the other hand, contends that he directed "all employees [to] remove their personal religious items from County park offices, shops, and vehicles." (D.E. 36, Ex. 2, p. 2.)  Stovall also contends that he "told all employees that they should no longer discuss religion with each other, since these personal discussions were apparently distracting them from their work." (D.E. 36, Ex. 2, p. 2.)  Further, according to Suarez, "Stovall tried to interfere with [his] ability to go to Sunday Mass by putting [him] on weekend shifts [and] night duty." (D.E. 37, Ex. 1, p. 5.)

Suarez had kept in his desk at work "various personal belongings[,] including … a statute of St. Joseph, [his] holy card of Immaculate Heart of Mary, St. Benedict Monk wooden statue, [and an] inspirational card" (D.E. 37, Ex. 1, p. 5.)  Suarez had also kept a rosary on the rear view mirror of the county vehicle he used for work.  (D.E. 37, Ex. 1, p. 5.)  From early March to mid-March, 2006, Suarez went on "light duty" at the courthouse because he had injured himself.  (D.E. 37, Ex. 1, p. 5.)  Upon returning to work at the

parks department, Suarez "discovered [his] own personal desk thrown out in the mud and destroyed." (D.E. 37, Ex. 1, p. 5.)  He also discovered that his rosary was gone.  (D.E. 37, Ex. 1, p. 5.)  According to Suarez, his rosary was "irreplaceable because it was blessed by Pope John Paul II one week before his passing."

There are conflicting accounts of Stovall's role in the disappearance of Suarez's rosary.  Stovall maintains that, upon seeing the rosary hanging on the rear-view mirror of the truck, simply stated "that shouldn't be there," before walking to his office. (D.E. 36, Ex. 2, p. 2.)  However, Suarez presents evidence that Stovall actually told another employee to "remove" the rosary. (D.E. 37, Ex. 1, p. 6.)  Plaintiff states that he has "grieved inconsolably at times over the destruction of his rosary and the manner in which his religious beliefs have been abused and profaned."  (D.E. 1, ¶ 20.)

### III.   Procedural Background

Plaintiff filed his charge of discrimination with the EEOC on August 14, 2006. Plaintiff had alleged that he was harassed because of his age and religion.[1]  The EEOC issued its right to sue letter to Plaintiff on April 7, 2008.  Plaintiff commenced his lawsuit against Nueces County, Texas within 90 days, on July 7, 2008.  (D.E. 1, Ex. 2.)

Plaintiff currently brings the following claims against Defendant:  (1) a claim for age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); (2) a claim under 42 U.S.C. § 1983 for religious discrimination in violation of the First Amendment to the United States Constitution; (3) a claim under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment to the United States Constitution; (4) a claim for religious discrimination in violation of Title

---

[1] Plaintiff also alleged that he was harassed because he has a disability; however, he has since abandoned this claim. (D.E. 16.)

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (5) a claim for retaliation in violation of Title VII.[2]  (D.E. 16)

On September 5, 2008, Defendant brought a motion for partial summary judgment, arguing that Suarez's ADEA claim was time-barred.  (D.E. 15.)  This Court denied Defendant's motion, noting that there is a genuine issue of fact as to whether equitable tolling is appropriate. (D.E. 21.)   Defendant now brings this motion for summary judgment on all remaining causes of action. (D.E. 36.).

## IV.   Discussion

### a.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ.,

---

[2] Plaintiff originally brought a 42 U.S.C. § 1981 claim against Defendant, but has since chosen to abandon it. (D.E. 19, 20.)

80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Willis, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**b.  Age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.***

The Age Discrimination in Employment Act (ADEA) provides that "it shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "The prohibitions in [the ADEA] shall be limited to individuals who are at least 40 years of age."  29 U.S.C. § 631(a).

In order to establish a prima facie case of age discrimination, Plaintiff must show that: (1) he is within the protected class, (2) he is qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by someone younger or treated less favorably than similarly situated younger employees.  Smith v. City of Jackson, 351 F.3d 183, 196 (5th Cir. 2003); see also Baker, 430 F.3d at 753.

If the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the defendant to assert "a legitimate nondiscriminatory reason for its employment action."  Machinchick, 398 F.3d at 350.  "If the defendant meets its burden, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination."  Id.  Plaintiff may meet this burden by "producing evidence tending to show that the reason offered by the defendant is pretext for discrimination."  Id.  In this case, Plaintiff alleges both an intentional discrimination claim and a hostile work environment claim.  (D.E. 1, p. 11.)  Both claims are addressed, below.

### i. Intentional discrimination under the ADEA

Plaintiff alleges that he was "unfairly demoted" because of his age. (D.E. 1, p. 11.)  However, the only evidence Plaintiff presents of a demotion was when he was demoted in October 2002 from construction foreman to carpenter "in retaliation for reporting [Lawrence] to Nueces County." (D.E. 1, p. 5; D.E. 37, Ex. 1, p. 1, 3)  Plaintiff presents no evidence that he was demoted because of his age.  On the contrary, he presents evidence only that he was demoted in retaliation for assisting the FBI with the prosecution of Lawrence for possession of child pornography.  (D.E. 37, Ex. 1, p. 3.)  Further, in his response to Defendant's motion for summary judgment, Plaintiff contends that he suffered only a hostile work environment against older employees, and not that he

was demoted because of his age.  (D.E. 37, p. 8.)  Therefore, Plaintiff has failed to present a material issue of fact as to whether he suffered intentional discrimination under the ADEA.

### ii.  Hostile work environment under the ADEA

Plaintiff also contends that he was "subjected to a hostile work environment on the basis of his age." (D.E. 1, p. 11.)  An age discrimination claim based on a hostile work environment is evaluated under a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; and whether it unreasonably interferes with an employee's work performance." Hill v. Department of Veteran Affairs, 2009 WL 348767 (5th Cir. 2009) (citations omitted).  In order to constitute a hostile work environment, comments must be more than "offensive and boorish;" they must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Moody v. U.S. Secretary of Army, 72 Fed.Appx. 235, 239 (5th Cir. 2003.)  In particular, "[t]o establish a hostile work environment claim, a plaintiff must prove that: (1) he is in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his status as a member of the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action." McNealy v. Emerson Elec. Co., 121 Fed.Appx. 29, 34 (5th Cir. 2005) citing Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001).  See also Ginn v. Texas Wired Music, Inc., 252 F.3d 436, at *2 (5th Cir. 2001.)  Plaintiff need not

establish the fifth element if the alleged harasser is a supervisor with immediate or higher authority over the employee.  Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999).

Here, Plaintiff has submitted evidence that he is over 40 years old and he was subjected to unwelcome harassment by his supervisor. (D.E. 37, Ex. 1.)  Further, Plaintiff has submitted evidence that the harassment he suffered was both severe and pervasive. (D.E. 37, Ex. 1.)  He was continuously mocked and ridiculed for being too old and too slow.  (D.E. 37, Ex. 1, p. 4.)  Dead rats were hidden in his work van, a machete was thrown at his work van, and nails and metal tacks were thrown near his tires.  (D.E. 37, Ex. 1, p. 4.)  People left "written notes on his desk that said, 'rat.'" (D.E. 37, Ex. 1, p. 4.) He was told by Stovall that he "ought to be working as fast as the young kids." (D.E. 37, Ex. 2, p. 4.)  He was not permitted to work overtime, but younger employees were.  (D.E. 37, Ex. 1, p. 4.)   In fact, Suarez was "banish[ed] to work alone, or far from the main office." (D.E. 37, Ex. 1, p. 4.)  Due to the way Plaintiff was treated, he felt "as if [his] life was in danger." (D.E. 37, Ex. 1, p. 4.)  He became "jumpy" and "nervous" and suffered panic attacks.  (D.E. 37, Ex. 1, p. 4.)   This evidence, when viewed in the light most favorable to the Suarez, is sufficient to create a genuine issue of fact as to whether Suarez suffered harassment on the basis of his age in violation of the ADEA.   See e.g. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000) ("[W]e recount the facts in a light most favorable to [Plaintiff's] arguments so as to facilitate a review of the facts deferential to the non-movant vis-à-vis summary judgment.").

Because Plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant to assert "a legitimate nondiscriminatory reason for its

employment action." <u>Machinchick</u>, 398 F.3d at 350.  Defendant's only argument that its actions were legitimate and nondiscriminatory is, cryptically, that a "supervisor[] need[s] to keep the employees focused on their work." (D.E. 36, p. 20.)   Other than this unsupported and unexplained assertion, Defendant offers no evidence that there was a legitimate, nondiscriminatory reason for the way Suarez was treated.  <u>Patrick v. Ridge</u>, 394 F.3d 311, 316 (5th Cir. 2004)  "Fatal to the [Defendant's] position here is the well-established rule that, to meet its burden of production under <u>McDonnell Douglas</u>, an employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual." <u>Patrick v. Ridge</u>, 394 F.3d 311, 317 (5th Cir. 2004)  This means "that to rebut an employee's prima facie case, a defendant employer must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee." <u>Patrick v. Ridge</u>, 394 F.3d 311, 317 (5th Cir. 2004.)   Defendant has therefore failed to assert a legitimate, non-discriminatory reason for the alleged harassment..

Accordingly, Plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether Defendant created a hostile work environment on the basis of Plaintiff's age.  <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986). Therefore, summary judgment is inappropriate on this claim.

### c.  <u>Religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII")</u>

"Title VII of the Civil Rights Act of 1964 ... forbids religious discrimination by private-sector employers, 78 Stat. 255, 42 U.S.C. § 2000e-2(a)(1)." <u>Edwards v. Aguillard</u>, 482 U.S. 578, 618, 107 S.Ct. 2573, 2596 (1987).  If Plaintiff establishes a prima facie case of religious discrimination, "the burden shift[s] to the employer to show

that it was unable reasonably to accommodate [Plaintiff's] religious needs without undue hardship." Daniels v. City of Arlington, Tex., 246 F.3d 500, 506 (5th Cir. 2001) (citations omitted).  It is unclear whether Plaintiff alleges both religious discrimination and hostile work environment, so, in an abundance of caution, this Court will address both claims, below.

### i.  Religious discrimination under Title VII

"To establish a prima facie case of religious discrimination under Title VII, a plaintiff must establish that he had a bona fide religious belief that conflicted with an employment requirement, that he informed the employer of his belief, and that he was discharged [or made to suffer another adverse employment action] for failing to comply with the conflicting employment requirement." Weber v. Roadway Exp., Inc., 199 F.3d 270, 273 (5th Cir. 2000); see also Rubenstein v. Administrators of Tulane, 218 F.3d 392, 399 (5th Cir. 2000) (noting that the prima facie case of religious discrimination under Title VII includes a showing that Plaintiff suffered an "adverse employment decision."). "Adverse employment actions are defined as 'ultimate employment decisions,' such as 'hiring, granting leave, discharging, promoting and compensating.'" Hart v. Life Care Center of Plano, 243 Fed.Appx. 816, 818 (5th Cir. 2007)

Although Plaintiff alleges that he was subjected to an adverse employment action on the basis of his religion, he does not specify any adverse employment action in particular.  (D.E. 37, p. 13.)  Plaintiff was allegedly demoted from construction foreman to carpenter, but he argues that this demotion was in retaliation for reporting Lawrence to the authorities for possessing child pornography; he provides no evidence that this demotion was due to religious discrimination. (D.E. 36, Ex. 5, p. 200; D.E. 37, Ex. 1, p.

2-3).  (D.E. 36, Ex. 5, p. 200; D.E. 37, Ex. 1, p. 2-3; D.E. 37, p. 13)   Because Plaintiff does not provide any evidence of an adverse employment action taken against him on the basis of religious discrimination, Plaintiff has failed to present a prima facie case of religious discrimination under Title VII.

### ii.  Hostile work environment under Title VII

"To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007.)   Plaintiff need not establish the fifth element if the alleged harasser is a supervisor with immediate or higher authority over the employee.  Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999).

"For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive.  Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive.  To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance.  No single factor is determinative." E.E.O.C. v. WC&M

Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007)   "Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment."  E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 400 (5th Cir. 2007).

Here, Plaintiff has presented sufficient evidence to create an issue of fact as to whether the harassment that Plaintiff suffered was so severe or pervasive as to alter a condition of his employment.  Plaintiff, a devout Catholic, has presented evidence that he was subjected to unwelcome harassment on the basis of his religion from his supervisors and coworkers. (D.E. 37, Ex. 1.)  As noted above, Suarez presents evidence that he was continuously mocked and ridiculed, both to his face and through notes.  (D.E. 37, Ex. 1, p. 4.)   He was accosted with dead rats hidden in his van, a machete thrown at his van, and nails and metal tacks thrown on the road near his van.  (D.E. 37, Ex. 1, p. 4.)  He was told that it was a "sin" when he got sick and it was "a sin to be poor." (D.E. 37, Ex. 3, p. 342.)  He was told that his religious beliefs regarding purgatory were wrong.  (D.E. 36, Ex. 3, p. 342.)  Raul Rodriguez "would ridicule [Suarez's] Catholicism" and tell Suarez that he "had the wrong religion."  (D.E. 37, Ex. 1, p. 5.)  Another time, Rodriguez told him, "The cross you wear has the devil behind it and you're a hypocrite for wearing it[.Y]ou take the devil to church and to your family…." (D.E. 36, Ex. 3, p. 342.)

Suarez himself was deeply offended by these events.  He explains, "I found my supervisors' harassing comments to be extremely offensive, embarrassing and humiliating." (D.E. 37, Ex. 1, p. 4.)  Therefore, Plaintiff has presented sufficient evidence to establish that the harassment he experienced was "subjectively abusive." Hockman v. Westward Communications, LLC, 407 F.3d 317, 325-26 (5th Cir. 2004).  Moreover,

upon "considering the totality of the circumstances," this Court finds that Plaintiff's "subjective[] perce[ption of this] harassment [is] objectively reasonable." Id. at 325; Frank v. Xerox Corp, 347 F.3d 130, 138 (5th Cir. 2003). "[D]iscriminatory verbal intimidation, ridicule and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII." Mota v. University of Texas Houston Health Science, 261 F.3d 512, 523-24 (5th Cir. 2001). In this case, given the continuous and severe abuse Plaintiff was alleged to have suffered on the basis of his religious beliefs, "[a] jury could rationally infer that [Defendant's] conduct was sufficiently extreme as to create a hostile work environment." Mota v. University of Texas Houston Health Science, 261 F.3d 512, 524 (5th Cir. 2001.) Therefore, Plaintiff has presented sufficient evidence to create a material issue of fact as to whether Plaintiff suffered a hostile work environment.

### d.  Retaliation under Title VII on the basis of religion

"To establish a prima facie retaliation claim, [Plaintiff] must prove that: (1) he engaged in an activity that Title VII protects; (2) [Defendant] carried out an adverse employment action; and (3) a causal nexus exists between her protected activity and [Defendant's] adverse action." Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005.) "In the retaliation context, an adverse employment action is one that a reasonable employee would have found to be materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Puente v. Ridge, 2009 WL 1311504, at *5 (5th Cir. 2009)

Here, Plaintiff asserts that around October 2002, he was "demoted" from "construction foreman to a carpenter" in retaliation for reporting Lawrence to the authorities for possessing child pornography. (D.E. 36, Ex. 5, p. 200; D.E. 37, Ex. 1, p. 2-3)  Further, he asserts that he was ordered to "remove all [of his] religious articles even though other employees were allowed to keep crosses, pictures of angels and Bible quotes at their desk" and was nearly given a work schedule that would have prevented him from going to Sunday mass, all in retaliation for complaining to Stovall about Rodriguez's "discrimination" against Suarez. (D.E. 37, Ex. 1, p. 5.)

Plaintiff presents no evidence that he was engaged in an activity protected by Title VII when he was demoted to the carpenter position.  He presents evidence only that he was "demoted … in retaliation for reporting [Lawrence] to Nueces County." (D.E. 37, Ex. 1, p. 3.)  This is not an activity protected under Title VII. See 42 U.S.C. § 2000e-2 (prohibiting employment discrimination on the basis of "race, color, religion, sex, or national origin.") Blow v. City of San Antonio, 236 F.3d 293, 296-97 (5th Cir. 2001) (requiring a prima facie showing that the plaintiff is a member of a protected class). Therefore, Plaintiff has failed to present evidence indicating that his demotion constituted retaliation under Title VII.

On the other hand, Plaintiff does present evidence that he was retaliated against for complaining to Stovall about suffering religious discrimination.  An employee has engaged in protected activity when he has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  In complaining to Stovall about the alleged

harassment, Suarez was engaging in protected activity.  <u>See</u> <u>e.g.</u>  <u>Tureaud v. Grambling</u> <u>State University</u>, 294 Fed.Appx. 909, 914 (5th Cir. 2008)  ("To satisfy the opposition requirement, [Plaintiff] need only show that he had a reasonable belief that the employer was engaged in unlawful employment practices.")

After lodging a complaint with Stovall, Suarez was ordered to remove all of his religious materials from work.  (D.E. 37, Ex. 1, p. 5.)  Although Plaintiff was required to remove his religious materials from work, "other employees were allowed to keep crosses, pictures of angels, and Bible quotes at their desk[s]."  (D.E. 37, Ex. 1, p. 5) Stovall also tried to "interfere with [Plaintiff's] ability to go to Sunday Mass by putting [Plaintiff] on weekend shifts [and] night duty."  (D.E. 37, Ex. 1, p. 5.)  These weekend and night shifts were not previously part of Plaintiff's "regular schedule." (D.E. 37, Ex. 1, p. 5.)  Plaintiff further contends that after he complained to Stovall about suffering religious discrimination, Suarez's religious items were purposely destroyed.  (D.E. 37, Ex. 1, p. 5.)  Suarez discovered his desk, in which he "kept a statue of St. Joseph, [his] holy card of Immaculate Heart of Mary, St. Benedict Monk wooden statue, [and an] inspirational card,  had been "thrown out in the mud and destroyed."  Suarez also discovered that his Rosary, which had been hanging inside the vehicle he used for work, was "gone." (D.E. 37, Ex. 1, p. 5.)  Suarez was devastated by losing his Rosary, as it was "irreplaceable" in that it had been "blessed by Pope John Paul II one week before his passing."  Moreover, after Suarez filed a complaint with the EEOC, he was accused of taking long lunch breaks and of "not working" and of being "too slow." (D.E. 36, Ex. 3, p. 307-308; 312)  When Suarez asked why he was being falsely accused of such things, Edward Herrera told him, "You're the one who put in the complaint."

Such evidence is sufficient to create a material issue of fact as to whether Suarez was retaliated against after engaging in activity protected by Title VII. (D.E. 37, Ex. 1, p. 4-5.)  Ordering Suarez to remove his religious materials while permitted other employees to keep theirs, destroying Suarez's religious materials, and falsely accusing Suarez of poor behavior at work are all adverse employment actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Puente v. Ridge, 2009 WL 1311504, at *5 (5th Cir. 2009);   Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005.)  Therefore, viewing the evidence in the light most favorable to Suarez, there is sufficient evidence to create a material issue of fact as to whether Suarez suffered retaliation after engaging in protected activity under Title VII.

### e.  Religious discrimination under 42 U.S.C. § 1983

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege or prove two elements: (1) that he was deprived of a right or interest secured by the Constitution and laws of the United States; and (2) that the deprivation occurred under color of state law.  See West v. Adkins, 487 U.S. 42, 48 (1988).

### i.  Municipality liability under Section 1983

A municipality qualifies as a "person" liable under Section 1983.  Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 690 (1978).  However, if a Section 1983 claim is brought against a municipality, the claim must be based upon the implementation or execution of an official policy.  See Krueger v. Reimer, 66 F.3d 75, 76

(5th Cir. 1995). A municipality "cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under Section 1983 on a respondeat superior theory." Monell, 436 U.S. at 691 (emphasis in original).

To support a Section 1983 claim against a municipality, the plaintiff must allege and prove: (1) an official policy existed; (2) the governmental policy-makers actually or constructively knew of its existence; (3) the plaintiff was subjected to a constitutional violation; and (4) the official policy served as the moving force behind the constitutional violation. See Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 523 (5th Cir. 1996); Wassum v. City of Bellaire, Tex., 861 F.2d 453, 455 (5th Cir. 1988); Grandstaff v. City of Borger, Tex., 767 F.2d 161, 169 (5th Cir. 1985); Liberty County Officers v. Stewart, 903 F.Supp. 1046, 1053 (E.D. Tex. 1995). The Fifth Circuit has defined an "official policy" as either:

> (1)   A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom lawmakers have delegated policy making authority; or
>
> (2)   A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to the official to whom that body had delegated policy making authority.

Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992); see also Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1304 (5th Cir. 1995). Regarding the second definition, the Fifth Circuit has stated that "[i]solated violations are not the persistent, often repeated constitutional violations that constitute a custom and policy as required for municipal section 1983 liability." Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir.

1995).   "Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined." Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)

A single decision may create municipal liability if that decision was made by a final policymaker responsible for that activity.   See Bennet v. Pippin, 74 F.3d 578 (5th Cir. 1996).  State law determines whether a particular individual is a municipality's final decision-maker with respect to a certain sphere of activity.  See id.; Brooks v. George County, Miss., 84 F.3d 157 (5th Cir. 1996).

Here, Plaintiff has failed to allege any facts indicating that his alleged deprivation of his first amendment rights was the result of an official policy or custom.   See Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995)   Suarez does allege that he was singled out by Stovall, claiming: "After I complained about Mr. Rodriguez's discrimination, Mr. Stovall ordered me to remove all my religious articles even though other employees were allowed to keep crosses, pictures of angels and Bible quotes at their desk.  Mr. Stovall tried to interfere with my ability to go to Sunday Mass by putting me on weekend shifts, night duty, which is not my regular schedule." (D.E. 37, Ex. 1, p. 5.)  However, Plaintiff presents no facts indicating that Stovall had the authority to implement policies regarding religious articles.  Stovall "report[s] to the director of Inland Parks Community Service, Edward Herrera" who, according to Stovall is "the final authority for the park system." (D.E. 37, Ex. 3, p. 8)  In his deposition, Stovall explained that there are 16 employees in his department, including Plaintiff.  (D.E. 37, Ex. 3, p. 9.)  Stovall does not have the authority to give raises or to promote an employee. (D.E. 37, Ex. 3, p. 11-12)   He can make recommendations to Herrera regarding

disciplinary proceedings, but he does not have the authority to terminate an employee. (D.E. 37, Ex. 3, p. 13-14.)  Plaintiff presents no evidence suggesting that Stovall retains the requisite authority to implement policy for Defendant.

On the contrary, Plaintiff himself alleges that Stovall "knew of no written policy adopted or implemented by Defendant regarding religion and religious activity in the workplace." (D.E. 37, p. 17.)  Plaintiff even contends that the "summary judgment records essentially depicts a work place with no discernable written policies" (D.E. 37, p. 17.)  "Liability must rest on official policy … and not the policy of an individual official." Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984)  "[C]ulpable policy is attributable to the governing body of the city where the policy was made by an official to whom the governing body had given policymaking authority."  Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984).  "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995)  Defendant is therefore not liable under § 1983 for the decisions Stovall made regarding religious articles and discussions at work.

## V.   Conclusion

For the reasons set forth above, the Court hereby PARTIALLY GRANTS and PARTIALLY DENIES Defendant's motion for summary judgment. (D.E. 36) Defendant's motion for summary judgment is DENIED with respect to the following claims by Plaintiff:

(1) hostile work environment on the basis of age in violation of the ADEA;

(2) hostile work environment on the basis of religion in violation of Title VII; and

(3) retaliation under Title VII.

Defendant's motion for summary judgment is GRANTED with respect to the following claims by Plaintiff:

(4) intentional discrimination on the basis of age in violation of the ADEA;

(5) intentional discrimination on the basis of religion in violation of Title VII; and

(6) all claims under § 1983.

SIGNED and ORDERED this 24th day of June, 2009.

Janis Graham Jack
United States District Judge