UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JESUS JESSE SUAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-08-217 |
| | § | |
| NUECES COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day came on to be considered Defendant's renewed motion for judgment as a matter of law in the above-styled action. (D.E. 89.) For the reasons set forth below, Defendant's motion is hereby GRANTED.

**I.     Jurisdiction**

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Plaintiff brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

**II.    Factual and Procedural Background**

Plaintiff Jesus "Jesse" Suarez is a 56-year-old devout Roman Catholic. (D.E. 37, Ex. 1, p. 1-2.)   He has been employed by the Nueces County Community Services and Inland Parks Department since October 5, 1998.  (D.E. 37, Ex. 1, p. 2.)  He currently works there as a carpenter. (D.E. 37, Ex. 1, p. 2.; D.E. 1, p. 5.)

Suarez is supervised by Sylvester Stovall, Jr. and Raul Rodriguez.  (D.E. 37, Ex. 1, p. 3.) Stovall has been the Inland Parks foreman since August, 2003 and has been Suarez's supervisor since 2005.  (D.E. 37, Ex. 1, p. 3; D.E. 36, Ex. 2, p. 1.)  Rodriguez is the assistant foreman. (D.E. 37, Ex. 1, p. 3.)

Suarez kept some of his personal religious items in his desk at work and hung a rosary from the rearview mirror of the county vehicle he used for work. Suarez alleges that he was "singled out" because of his religious beliefs, and that he was "verbally abused" and "made to work alone." (D.E. 90, p. 4.) Further, Suarez complained that Rodriguez would "lecture him" on religious matters. (Suarez Testimony, 11:57.) Suarez spoke with his supervisor, Stovall, about the alleged religious harassment. In response, Stovall told Suarez to remove all of his religious articles from his work area. (D.E. 90. p. 5; Suarez Testimony, 1:14) Although Stovall disagrees, Suarez testified that no one else was required to remove their religious materials from work. Some time later, Suarez left on worker's compensation to work at a different location for a few months. He removed all of the religious materials from his desk, except he "forgot" to remove a statue of St. Joseph from his desk and he "forgot" to take "the rosary out of the county van" (Suarez Testimony, 1:15.)

After returning to work, Suarez was assigned to use the same van he had been using before he left. (Suarez Testimony, 1:24.) Upon returning, Suarez discovered that his rosary was gone and his desk, which had held his statue of St. Joseph, had been "thrown out in the mud." (Suarez Testimony, 1:25.) Although Stovall disputes it, Suarez believes that Stovall ordered one of Suarez's co-workers to get rid of the rosary. (Suarez Testimony, 1:25.) Suarez still works as a carpenter for Nueces County. (D.E. 37, Ex. 1, p. 2.) No evidence was presented that he lost any pay or status as a result of the alleged wrongdoing by Defendant. (D.E. 90.)

On July 7, 2008, Plaintiff brought the following claims against Defendant Nueces County, Texas: (1) a claim for age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); (2) a claim for religious discrimination under 42 U.S.C. § 1983 in violation of the First Amendment to the United States

Constitution; (3) a claim for retaliation under 42 U.S.C. § 1983 in violation of the First Amendment to the United States Constitution; (4) a claim for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (5) a claim for retaliation in violation of Title VII.[1] (D.E. 16)

Defendant brought a motion for summary judgment (D.E. 36.) which this Court partially granted and partially denied (D.E. 48). Following this Court's summary judgment order, Plaintiff's only remaining claims were: (1) hostile work environment on the basis of age in violation of the ADEA; (2) hostile work environment on the basis of religion in violation of Title VII; and (3) retaliation under Title VII. (D.E. 48.)

Trial began on July 13, 2009 and Plaintiff rested his case-in-chief the following day. After the close of Plaintiff's case-in-chief, Defendant moved for a directed verdict. The Court granted Defendant's motion for a directed verdict with respect to Plaintiff's claim for a hostile work environment under the ADEA, leaving only Plaintiff's Title VII hostile work environment and his Title VII retaliation claim. The jury began deliberating after the close of arguments on July 14, 2009. The Court then ordered an unopposed directed verdict for Defendant on this issue of Plaintiff's claims for future damages because Plaintiff had failed to present any evidence on the issue. (D.E. 67.) On July 16, 2009, after the jury advised the Court that it was deadlocked, the Court granted a mistrial. Following the trial, Defendant renewed its motion for judgment as a matter of law, which the Court now considers. (D.E. 89.)

---

[1] Plaintiff also originally brought a 42 U.S.C. § 1981 claim against Defendant, but later chose to abandon it. (D.E. 19, 20.)

### III. Discussion

#### a. Motion for judgment as a matter of law

Pursuant to Federal Rule of Civil Procedure 50(a)(1): "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party; and grant a motion for judgment as a matter of law against the party." Fed. R. Civ. P. 50(a)(1). "In essence, the inquiry for the court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Bui v. Horseshoe Entertainment, 2009 WL 587084 *5 (W.D. La. 2009) citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)

The fact that a case was submitted to a jury and the jury became deadlocked does not preclude the Court from granting a motion for judgment as a matter of law. Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 623 (5th Cir. 2008). "[T]he proper grant of a judgment as a matter of law makes the submission of the case to the jury irrelevant." Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 623 (5th Cir. 2008) citing Sullivan v. Rowan Companies, Inc., 952 F.2d 141, 149 (5th Cir. 1992) ("Because the district court's rulings [of a judgment notwithstanding the verdict and a directed verdict] implicitly mean that submitting them to the jury was unnecessary, the manner in which the instructions may, or may not, have affected the verdict is not material.")

#### b. Hostile work environment under Title VII

"To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment

affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007.) Plaintiff need not establish the fifth element if the alleged harasser is a supervisor with immediate or higher authority over the employee. Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999).

"For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. No single factor is determinative." E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007) "Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment." E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 400 (5th Cir. 2007).

### c. Much of the alleged harassment was unrelated to Suarez's religion

Suarez testified that he was made fun of for wearing knee braces (Suarez Testimony, 11:05) and was told to "clank [his knees] together and go back to Oz." (Suarez Testimony, 11:05). He testified that Stovall told him he was "walking too slow" and that he needed to "keep up with the younger kids." (Suarez Testimony, 11:19.) Further, Suarez testified that Stovall had Suarez work alone. (Suarez Testimony, 11:07.) Suarez found the work "harder to

do" without help from others. (Suarez Testimony, 11:08.) Suarez also testified that Stovall told him, under Herrerra's orders, that Suarez couldn't work overtime. (Suarez Testimony, 11:21.) According to Suarez, Stovall treated him "kinda rough." (Suarez Testimony, 11:24) Stovall would "holler at [Suarez] and tell [him] to go do things" and "get in [his] face." (Suarez Testimony, 11:24.) Suarez testified that he told Stovall to stop yelling at him, but Stovall said "I'm the boss, I do what I want." (Suarez Testimony, 11:25.) Even assuming *arguendo* that such behavior constituted harassment, Suarez presented no evidence that this harassment was based on Suarez's religion. Therefore, such evidence cannot be used to establish a hostile work environment. E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007.)

### d. **Plaintiff failed to present sufficient evidence that the behavior was objectively offensive enough to alter the conditions of his employment**

In order to establish a hostile work environment on the basis of religious harassment, Plaintiff must show that the harassing conduct was "both objectively and subjectively offensive." E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007.) On the whole, Suarez presented notably scant evidence of harassment related to his religion. Much of the evidence of harassment amounted to comments and opinions about religion. Suarez testified that Rodriguez was continuously praying and quoting scriptures and saying how good the Lord is. (Suarez Testimony, 11:58.) Suarez stated that Stovall criticized him for helping out with church groups (Suarez Testimony, 11:33) and that Suarez was "tired" of Raul Rodriguez "lecturing" him about religion (Suarez Testimony, 11:57). Rodriguez told Suarez that the Catholic church was not the "true" church. (Suarez Testimony, 11:58.) Rodriguez also told Suarez that the cross Suarez wore was "the devil" and Suarez was a "hypocrite" for wearing it. (Suarez Testimony, 1:10.)

Further, although Plaintiff testified about a whole host of medical maladies, including diabetes, high blood pressure, an injured hand, bad knees, and an asbestos-related disease, he

admitted that all of these medical conditions were diagnosed many years prior to his claims of harassment and retaliation. (Suarez Testimony, 10:50-11:02.) Nonetheless, Suarez did testify that the alleged harassment made him "angry" and "upset," and caused him to "suffer[] more severe diabetic symptoms." (Suarez Testimony, 1:11, 1:36.) Accordingly, this Court will assume, for the sake of argument, that such evidence is sufficient to establish that the harassing conduct was subjectively offensive. Hockman v. Westward Communications, LLC, 407 F.3d 317, 325 (5th Cir. 2004.)

Even assuming, however, that this evidence is sufficient for a jury to find that the harassment was subjectively offensive to Suarez, the evidence does not establish that the harassment was objectively offensive. Hockman v. Westward Communications, LLC, 407 F.3d 317, 325-26 (5th Cir. 2004). E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 399 (5th Cir. 2007) Given the scant amount of evidence presented at trial related to harassment based on Plaintiff's religion, this Court cannot find that Plaintiff's "subjective[] perce[ption of this] harassment [is] objectively reasonable." Id. at 325; Frank v. Xerox Corp, 347 F.3d 130, 138 (5th Cir. 2003). Suarez argues that Defendant is not entitled to judgment as a matter of law, because Plaintiff presented evidence that Rodriguez "lectur[ed] employees on religion" and told Suarez that Suarez "believ[ed] in the devil" and took "the devil to his family." (D.E. 90, p. 4.) However, "[i]t is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words … to the level of an actionable offense." McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 564 (5th Cir. 1998). "Discourtesy or rudeness, 'offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'" Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) citing Faragher v. City of Boca Raton, 524

U.S. 775 (1998). The comments that Plaintiff contends constitute harassment do not, as a matter of law, rise to the level of harassment under Title VII. "[C]laims of non-severe, non-pervasive harassment are excluded from Title VII." Indest v. Freeman Decorating, Inc., 164 F.3d 258, fn8 (5th Cir. 1999). This is because "[t]he prohibition of harassment … forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment. 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview.'" Oncale v. Sundower Offshore Services, Inc., 523 U.S. 75, 81 (1998) citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)

Therefore, even viewing all of the evidence in the light most favorable to Suarez, the evidence presented at trial was still not sufficient for a jury to find that Suarez suffered a hostile work environment. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) as to Plaintiff's claim of hostile work environment under Title VII.

### e. Retaliation under Title VII on the basis of religion

"To establish a prima facie retaliation claim, [Plaintiff] must prove that: (1) he engaged in an activity that Title VII protects; (2) [Defendant] carried out an adverse employment action; and (3) a causal nexus exists between her protected activity and [Defendant's] adverse action." Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005.)

With respect to the first element, that Plaintiff engaged in an activity that Title VII protects, an employee has engaged in protected activity when he has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

With respect to the second element, that Defendant carried out an adverse employment action, "[i]n the retaliation context, an adverse employment action is one that a reasonable employee would have found to be materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Puente v. Ridge, 2009 WL 1311504, at *5 (5th Cir. 2009). The "materiality requirement reflects the importance of separating 'significant from trivial harms. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008) citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006.) Those actions that "fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace … are not actionable retaliatory conduct." Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008) citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006.)

With respect to the third element, that a causal nexus exists between Plaintiff's protected activity and Defendant's adverse action, the Fifth Circuit has determined that "The proper standard of proof [for the causation component of] a Title VII retaliation claim is that the adverse employment action … *would not have occurred 'but for' [the] protected conduct.*" Strong v. University Healthcare System, LLC, 482 F.3d 802, 808 (5th Cir. 2007) (emphasis in original).

  f. **Plaintiff failed to present sufficient evidence to establish that Plaintiff would not have suffered an adverse employment action but for his engagement in protected activity**

Plaintiff claims that Defendant destroyed his religious materials in retaliation for Plaintiff engaging in activity protected by Title VII.[2] (D.E. 74, p. 4.) Suarez engaged in protected activity when he complained to Stovall about the alleged harassment. See e.g. Tureaud v. Grambling State University, 294 Fed.Appx. 909, 914 (5th Cir. 2008) ("To satisfy the opposition requirement, [Plaintiff] need only show that he had a reasonable belief that the employer was engaged in unlawful employment practices.") Further, Suarez presented evidence that the destruction of his religious materials constituted an adverse employment action, in that the destruction of one's treasured religious items "well might … dissuad[e] a reasonable worker from making or supporting a charge of discrimination." Puente v. Ridge, 2009 WL 1311504, at *5 (5th Cir. 2009). Specifically, Suarez presented evidence that his desk, which contained a statue of St. Joseph, was thrown out in the mud, and his rosary, which Plaintiff had left hanging off the rear view mirror in the county vehicle he used for work, was thrown away. (Suarez Testimony, 1:25)

Although he arguably sets forth sufficient evidence to establish the first two elements of his retaliation claim, Plaintiff fails to establish the third element: namely, he fails to present sufficient evidence that Defendant's adverse employment action would not have occurred but for Plaintiff's engagement in protected activity. Strong v. University Healthcare System, LLC, 482 F.3d 802, 808 (5th Cir. 2007.) Plaintiff himself was well aware that his supervisor, Stovall, had ordered him to remove all of his religious materials from work. (Suarez Testimony, 1:14) In fact, Suarez had apparently intended to comply with his superior's orders before leaving on

---

[2] The agreed-upon jury instructions state: "Plaintiff [claims that] Defendant destroyed his religious materials in retaliation for Plaintiff's engaging in activity protected by anti-discrimination statutes." (D.E. 74, p. 4.) Because Plaintiff did not object to these instructions, he "waived the right to contest those instructions." Hollowell v. Orleans Regional Hosp. LLC, 217 F.3d 379, 389 (5th Cir. 2000) Therefore, the only conduct alleged to have been unlawful retaliation was the alleged destruction of Plaintiff's religious materials. (D.E. 74, p. 4.) "Needless to say, failure to request a jury instruction does not preclude a later JMOL." Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 188 F.3d 278, 284 (5th Cir. 1999).

worker's compensation because Suarez testified that he had removed most of his religious items, but "forgot" to remove the statue of St. Joseph from his desk and "forgot" to remove his rosary from the county vehicle. (Suarez Testimony, 1:15.) Even viewing this evidence in the light most favorable to Plaintiff, Suarez's own testimony suggests that Suarez's religious materials were destroyed because he forgot to remove them, as he was ordered to do. It is Plaintiff's burden to "establish that he [suffered an adverse employment action] in retaliation for engaging in protected activity." Dumas v. Union Pacific R.R. Co., 294 Fed.Appx. 822, 827 (5th Cir. 2008) (emphasis omitted). Plaintiff failed to present sufficient evidence for a jury to find a "causal link" between his protected activity and the destruction of his religious materials. Watkins v. Texas Dept. of Criminal Justice, 269 Fed.Appx. 457, 463 (5th Cir. 2008.) Accordingly, Defendant is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) as to Plaintiff's claim of retaliation under Title VII.

### IV.  Conclusion

For the reasons set forth above, the Court hereby GRANTS Defendant's motion for judgment as a matter of law on all claims in favor of Defendant. (D.E. 89.)

SIGNED and ORDERED this 31st day of August, 2009.

             Janis Graham Jack
             United States District Judge